IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMBROSE J. SAMPLE, II,

                  Petitioner,                  OPINION AND ORDER

    v.

                                                       21-cv-445-wmc

MATTHEW MARSKE,

                  Respondent.

---

Ambrose J. Sample, II, a prisoner currently incarcerated at the Federal Correctional Institution in Oxford, Wisconsin, is petitioning for post-conviction relief under 28 U.S.C. § 2241. Specifically, petitioner seeks to challenge the Bureau of Prisons' sentence credit calculation. Unfortunately, his petition must be dismissed without prejudice because Sample has not exhausted administrative remedies still available to him within the BOP.

BACKGROUND

In October of 1999, petitioner Ambrose Sample II was convicted in Pennsylvania state court of third degree murder, and sentenced to 12 to 25 years of confinement  On July 14, 2003, Sample was also convicted in Pennsylvania state court with simple assault and sentenced to one to two years of confinement  Sample represents that on July 25, 2016, he was released on parole for both of those convictions, but then arrested again on June 17, 2017, and charged in Pennsylvania state court with possession of a firearm by a felon. As a result, on June 18, the Pennsylvania Board of Probation and Parole ("PBPP") entered detainer against Sample and after a preliminary hearing, he was held over for trial on the new firearm charges.

1

On February 6, 2018, Sample was also charged in federal court with one count of being a felon in possession of ammunition and one count found of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *United States v. Sample*, No. 2:18-cr-31-JFC, dkt. #1 (W.D. Penn.).[1] On March 8, 2018, the U.S. Marshals took Sample into custody pursuant to a writ of habeas corpus ad prosequendum.

On March 21, 2019, Sample was convicted after a trial to the bench in the United States District Court for the Western District of Pennsylvania, on one count of being a felon in possession of a firearm (ammunition), in violation of 18 U.S.C. § 922(g)(1), although not guilty on the count charging him with possessing a firearm. On July 23, 2019, Sample was sentenced to 55 months of incarceration, to be followed by 3 years of supervised release.[2]

On July 25, 2019, however, Sample was returned to PBPP custody, and on January 6, 2020, a revocation hearing was held. Sample's timeliness challenge to the proceeding failed, and on February 18, 2020, he was revoked and recommitted to serve 18 months. According to Sample, the PBPP credited Sample with time previously served in custody from June 18, 2017, through March 8, 2018. Sample then timely appealed the PBPP's revocation decision.

---

[1] In conducting its review under Rule 4, the court may take judicial notice of the filings and orders in Sample's criminal proceedings. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned.")."

[2] Sample appealed his federal conviction, and the Court of Appeals for the Third Circuit affirmed on May 28, 2020. Sample also unsuccessfully pursued collateral relief pursuant to 28 U.S.C. § 2255.

On November 24, 2020, while his state revocation appeal was pending, Sample was again paroled, but then was placed in BOP custody the following day. According to Sample, the BOP only credited the time he spent in federal custody from June 17-18 of 2017, and from March 9, 2018, through July 24, 2019.

On December 15, 2020, the PBPP further rescinded its February 18, 2020, revocation decision and reinstated Sample to parole status. Although Sample informed the BOP of the PBPP's decision, the BOP's Designation and Sentence Computation Center ("DSCC") declined to credit him for any of the time he served in prison pursuant to the PBPP's order. On April 26, 2021, Sample then wrote an email to BOP questioning his June 23, 2023, projected release date. Sample stated in particular his correct release date should be May 15, 2021, because once his parole violation was dismissed, the time he served in state prison from June 18, 2017, through March 8, 2018, and July 25, 2019, through November 24, 2020, as never credited against his state sentence and, therefore, must be credited toward his federal sentence. (Dkt. #1-5, at 5.)

Instead, Sample allegedly received the following response from the BOP on May 6: "Any time spent incarcerated while on parole is credit[ed] to the state sentence w[hether] or not you were violated. Time credited to another sentence is not eligible for federal jail credit. Per the state documentation you were released to you[r] federal detainer on 11-25-2020 at which time your federal sentence started." (*Id.*) That same day, Sample responded that:

> As I explained the violation was dismissed after I was released to the B.O.P.'s custody on November 30, 2020, and the courts rule in US v. Gaines, that once the other charges are dismissed,

3

> the B.O.P. must credit that time to the federal sentence. Contact the Pennsylvania Board of Probation and Parole and they will tell you that no time is, nor can be credited to the state sentence.

(*Id.* at 9.) On May 7, Sample received the following reply:

> If a state case is dismissed you are correct but that is not the situation. You were on parole when you caught the federal case not a new case. Parole is [s]till an active sentence. It does not matter if the violation is dismissed or not. The sentence is running. So the time is credited to that sentence.

(*Id.*) In what amounted to a sur-reply, Sample wrote back again, stating that the State of Pennsylvania did not credit that time, and that those periods of time were "available to be credited to my federal sentence." (*Id.* at 13.)

On May 10, 2021, Sample received another reply from the BOP indicating that if he did not agree with the DSCC's decision, he could pursue the administrative remedy process. However, Sample's submissions indicate that he did not actually pursue relief through the BOP's administrative remedy process.[3] Instead, he maintains that it would be futile, since he already raised this issue with the DSCC.

OPINION

In his petition to this court, Sample seeks to challenge the BOP's decision not to credit the time he spent in state custody serving the revocation sentence. However, his

---

[3] The BOP's administrative remedy process requires federal prisoners to follow the grievance procedures set forth in 28 C.F.R. §§ 542.10-19. In general, those regulations provide that the prisoner must present the issue informally to prison staff, then if unsuccessful, submit an informal resolution form, and then a written complaint to the warden. If the prisoner is dissatisfied with the warden's response, he must file an appeal to the regional director, and then, if the issue is still unresolved, a form directed to the BOP's general counsel, which is the "final administrative appeal."

petition suffers from a threshold problem: he failed to exhaust his administrative remedies, which is a prerequisite to seeking habeas relief in federal court under 28 U.S.C. § 2241. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). A district court *may* excuse exhaustion where: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Gonzalez v. Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).

Although Sample claims that pursuing relief directly from the BOP would be futile, he has not articulated why BOP personnel would be biased against him in reviewing his administrative remedy, much less how the result is predetermined. None of the other exceptions to the exhaustion requirement apply either. For example, on this record, it appears that Sample has not even begun pursuing an administrative remedy under the BOP's procedures, so the court has no basis to infer that Sample would be prejudiced by the BOP's unreasonable delay or indefinite timeframe for reviewing his sentence credit claim. Similarly, the BOP appears fully capable of calculating the start date of Sample's federal sentence, as well as any sentence credit he may be due. Finally, the question Sample is raising relates to the BOP's discretionary decision to apply sentence credit to the periods of time in which Sample was serving a state court sentence, albeit one that was later dismissed; it does not concern a substantial constitutional question.

The entire purpose of the exhaustion requirement is to give the BOP the opportunity to evaluate the merits of Sample's claim to sentence credit. Since this has yet to occur, the court has no basis to excuse Sample's failure to exhaust his administrative remedies before the BOP. Accordingly, the court must dismiss this petition, although it will do so without prejudice to Sample's ability to renew once he has exhausted the BOP's process. To the extent a certificate of appealability is required, *see* Rule 11 of the Rules Governing § 2254 cases, the court declines to issue one, since reasonable jurists would not debate that this petition must be dismissed without prejudice. *See Miller El v. Cockrell*, 537 U.S. 322, 336 (2003).

ORDER

IT IS ORDERED that petitioner Ambrose J. Sample, II's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DISMISSED without prejudice. No certificate of appealability will issue.

Entered this 17th day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge